Geoffrey S. Kercsmar (#020528)
Gregory B. Collins (#023154)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001
(480) 421-1002 fax
gsk@kflawaz.com
gbc@kflawaz.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LHF Productions, Inc., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>John and Jane Doe 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff LHF Productions, Inc. ("Plaintiff") for its complaint against John and Jane Doe Defendants 1-10, alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff files this action for copyright infringement under the United States Copyright Act to combat the willful and intentional infringement of its creative works. Defendants, whose names Plaintiff expects to ascertain during discovery, illegally reproduced and distributed Plaintiff's copyrighted motion picture titled "London Has Fallen" by acting in concert via the "BitTorrent" file sharing protocol. London Has Fallen was only released in U.S. theaters on March 4, 2016; yet, the Doe Defendants using BitTorrent file sharing protocol have willfully copied and distributed the film on the internet. Plaintiff seeks a permanent injunction, statutory or actual damages, an award of costs and attorneys' fees, and other relief.

## PARTIES

2. Plaintiff LHF Productions, Inc. is a Nevada corporation. Plaintiff is the holder of the copyright for the motion picture at issue in this lawsuit: London Has Fallen. London Has Fallen is an American action thriller film directed by Babak Najafi and written by Creighton Rothenberger, Katrin Benedikt, Chad St. John, and Christian Gudegast. It is a sequel to the 2013 film Olympus Has Fallen, and stars Gerard Butler, Aaron Eckhart, and Morgan Freeman. London Has Fallen was just released in theaters on March 4, 2016. It is estimated that to-date the film has grossed over $200,000,000.00 worldwide.

3. Plaintiff brings this action to stop Defendants from copying and distributing to others unauthorized copies of London Has Fallen. Defendants' infringements allow them and others to unlawfully obtain and distribute, for free, unauthorized copies of the Plaintiff's movies that Plaintiff spends millions of dollars to create and/or distribute. Each time a Defendant unlawfully distributes a free copy of Plaintiff's movie to others over the internet, each person who copies that audiovisual work can then distribute that unlawful copy to others without any significant degradation in sound and picture quality. Thus, Defendants' distribution of even one unlawful copy can result in the nearly instantaneous worldwide distribution of that single copy to a limitless number of people.

4. Despite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendants by name at this time. Thus, the true names and capacities, whether individual, corporate, associate or otherwise, of John and Jane Doe Defendants 1-10 are unknown to Plaintiff.

5. Each of the 10 named Doe Defendants is known to Plaintiff only by an Internet Protocol address ("IP address"), which is a number assigned to Defendants' devices such as computers, by his or her Internet Service Provider ("ISP"). In the course of monitoring internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful reproduction and distribution occurring among the 10 IP addresses listed on Exhibit A, attached hereto, via the BitTorrent protocol (described more fully

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

below).  Due to the dynamic nature of IP address assignments, a single Defendant may be associated with multiple IP addresses.[1]  Plaintiff cannot ascertain the Defendants' actual identities without information from Defendants' ISPs, and Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and permit Plaintiff to amend this Complaint to state the same.  Plaintiff further believes that additional information obtained will lead to the identification of additional infringing parties, as monitoring of online infringement of Plaintiff's motion picture is ongoing.

## JURISDICTION AND VENUE

6. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 *et seq.*).

7. This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim under 17 U.S.C. § 101, *et seq.* (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights).  This Court has supplemental jurisdiction over all other claims under 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction because all Defendants either reside in or committed copyright infringement in this District.  Plaintiff used geolocation technology to trace the IP addresses of each Defendant to a point of origin within this District.  Geolocation is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time.  Through the use of geolocation, Plaintiff can establish good cause for asserting that personal jurisdiction is proper over the Defendants.  *See* Exhibit A, listing the believed city and state of residence of each Defendant.  In addition, and as described more fully below, personal jurisdiction in this District is proper because each Defendant unlawfully distributed and offered to distribute over the internet copyrighted works for which Plaintiff has exclusive rights in such a manner that the unlawful distribution occurred in every jurisdiction in the United States,

---

[1] For this reason, although Plaintiff has listed 10 Doe Defendants here, there may actually be fewer than 10 Defendants.

including this one. Defendants therefore, should anticipate being hailed into court in this State and in this District.

9. Venue in this District is proper under 28 US.C. § 1391(b) and/or 28 US.C. §1400(a). Although the true identity of each Defendant is unknown to Plaintiff at this time, each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District.

## JOINDER

10. Joinder of Defendants is proper because between June 1, 2016 and June 8, 2016, each of the Defendants acted in a collective and interdependent manner via the internet in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture by means of an interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent. Over the course of less than a month, each of the Defendants copied and distributed the same exact version of motion picture London Has Fallen via BitTorrent, a copy of Plaintiff's movie London Has Fallen with the "hash"[2] value SHA1: 5FD06ECEAD783738066F56B6F92CF62331797530.

11. The BitTorrent protocol provides significant benefits to its participants, deriving from its distributed and collaborative nature, but this very nature also makes its users susceptible to joinder under a number of legal theories. In order to understand the basis for joinder, a description of the BitTorrent protocol is necessary. The protocol is more fully described further below in the Complaint under the heading "Infringement and BitTorrent."

12. P2P networks, at least in their most common form, are computer systems that enable internet users to: a) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; b) search for files stored on other users' computers; and c) transfer exact copies of files from one computer to another via the internet.

13. The particular P2P protocol at issue in this suit is called a "BitTorrent protocol" or "torrent." The BitTorrent protocol is different than the standard P2P protocol

---

[2] The term "hash" value is defined and explained in paragraph 15 below.

4

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

used for file sharing networks such as Kazaa, and it makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The process begins when the initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a "seed." The seed is broken up into numerous tiny pieces, and those pieces are then uploaded, copied and distributed among the various users ("peers") to the torrent. When an infringer seeks to download a particular work, he first downloads a torrent file into a computer program designed to read such files, and the torrent file acts as a roadmap as to where each piece of the torrent can be found for downloading from each of the peers involved in that particular torrent. As the torrent is copied to the peer's computer piece by piece, the downloaded pieces become immediately available to all of the other peers in the network for similar downloading. As additional peers request the same file and begin to download its pieces, they each become a part of the network from which the pieces of the file can be downloaded. This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm." The effect of this technology makes every participant in the BitTorrent swarm both an uploader (distributor) and a downloader (copier) of the illegally transferred file.

14. This distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users, and does so without degradation in sound or picture quality. Once all the pieces are located and downloaded, they are reconstructed back into the original order, giving the user a complete copy of the entire original file. That user then makes pieces of that file, associated with that same unique hash tag, available for download by peers using the same process. Because of the nature of a BitTorrent protocol, any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first seed peer is online at the time the subsequent peer downloads a file. Essentially, every infringer is stealing copyrighted material from other infringers through many ISPs in numerous jurisdictions around the country.

15. Between June 1, 2016 and June 8, 2016, all of the Defendants in this matter

participated in the same swarm and shared the same copy of London Has Fallen. The copy of London Has Fallen that Defendants shared has its own specific "hash" value: SHA1: 5FD06ECEAD783738066F56B6F92CF62331797530. Each torrent file contains a "hash" value, which is a 40-character string of letters and numbers (hexadecimal) that uniquely identifies the specific original work to which the torrent file is associated. It is the hash value that allows the torrent client to find and download each of the specific pieces that make up a specific seed. The hash value can be analogized to a fingerprint, with each seed having its own, unique hash value. While a side work, such as a video or motion picture, might be uploaded for sharing by many different initial file-providers, each particular instance of sharing gets its own unique hash tag, and so all of the peers downloading a work associated with a single hash tag are actually downloading a single, particular work from a single original source. In other words, any particular work may be shared via multiple, separate seeds, but all sharing tied to a particular hash tag involves one particular seed created from a single original source, shared as part of a swarm.

16. All of the Defendants included in this matter participated in a single swarm in which each of them possessed and shared the exact same copy of London Has Fallen (the same seed) with the exact same hash value. *See* Exhibit A. The fact that all of the Defendants in this case were sharing the same work with the same specific hash tag links all of them together in collaborating to share the exact same copy of Plaintiff's London Has Fallen. While many people may have illegally downloaded London Has Fallen at various times from various sources, all of the Defendants in this matter participated together in sharing a specific copy of Plaintiff's movie originating from the same original seed. Therefore, each of the Doe Defendants to this matter acted and continues to act in concert as part of a networked system designed to infringe Plaintiff's copyright—a collective enterprise constituting "shared, overlapping facts."

17. Each Defendant participated in the same transaction, occurrence, or series of transactions or occurrences as other defendants to illegally reproduce and distribute London Has Fallen amongst each other. Specifically, the Defendants intentionally entered

and participated in a single BitTorrent swarm that was formed for the purpose of exchanging pieces of a file that was unique to the swarm.

18. Joinder is also appropriate here because the Plaintiff's claims against Defendants share the same questions of law with respect to copyright infringement, including but not limited to:

   a. whether "copying" has occurred within the meaning of the Copyright Act;

   b. whether entering a torrent swarm constitutes a willful act of infringement;

   c. whether entering a torrent swarm constitutes a civil conspiracy; and

   d. And whether and to what extent Plaintiff has been damaged by the Defendants' conduct.

For this reason, principles of judicial economy favor joinder of these Defendants.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Copyright

19. Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to London Has Fallen.

20. London Has Fallen contains wholly original material that is copyrightable subject matter under the laws of the United States.

21. On October 7, 2014, Plaintiff was granted a copyright preregistration under 17 U.S.C. § 408(f) for London Has Fallen. As the website for the United States' Copyright Office explains, "Preregistration is a service intended for works that have had a history of prerelease infringement. It focuses on the infringement of movies, recorded music, and other copyrighted materials before copyright owners have had the opportunity to market fully their products." London Has Fallen was assigned preregistration number PAu003789521.

22. The United States Copyright Office registered the copyright for London Has Fallen as Registration Number PA 1-982-831 with an effective date of March 14, 2016. (A copy of the Certificate of Registration is attached as Exhibit B.)

23. Under the Copyright Act, Plaintiff is the proprietor of all right, title, and interest in London Has Fallen, including the right to sue for past infringement.

24. Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted work and to distribute the copyrighted work to the public.

25. The torrent file used to access the copyrighted material was named in a manner that would have provided an ordinary individual notice that London Has Fallen was protected by the copyright laws.

26. Plaintiff's Movie is easily discernible as a professional work. Plaintiff created London Has Fallen using professional performers, directors, cinematographers, lighting technicians, set designers and editors. Plaintiff created London Has Fallen with professional grade cameras, lighting, and editing equipment.

27. London Has Fallen contains a copyright notice that the motion picture is protected by the copyright laws.

28. Users of the BitTorrent protocol initiate their infringing conduct by first intentionally logging into the one of many BitTorrent client repositories that are well known among users for their large index of copyrighted movies, television shows software and adult videos. The user then intentionally obtains a torrent file from the index and intentionally loads it into a computer program designed to read such files and use them to download the copyrighted material. The user does not pay for the copyrighted material or take any other steps to obtain a valid copy or license.

29. In light of the above, Defendants had notice of Plaintiff's copyright.

## Infringement and BitTorrent

30. Defendants, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Movie, purposefully loaded that torrent file into their BitTorrent clients, entered a BitTorrent swarm particular to Plaintiff's Movie, and reproduced and distributed London Has Fallen, including London Has Fallen's protected elements, to numerous third-parties.

31. As stated above, BitTorrent is a peer-to-peer file sharing protocol used for

copying and distributing data on the internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users, to download and upload from each other. The process is described below.

32. Users intentionally download a small program that they install on their computers--the BitTorrent "client" application. The BitTorrent client is the user's interface during the downloading/uploading process. There are many different BitTorrent clients, all of which are readily available on the internet for free.

33. BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

34. A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small torrent files known as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct the client application on a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

35. The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. The torrent file is tagged with the file's unique hash value, which acts as a roadmap to the IP addresses of other users who are sharing the media file identified by the unique hash value, as well as specifics about the media file.

36. A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on

the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

37.     Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

38.     Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

39.     The life cycle of a file shared using BitTorrent begins with just one individual—the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The file shared in this case is Plaintiff's movie London Has Fallen, which was shared with the hash value SHA1: 5FD06ECEAD783738066F56B6F92CF62331797530.

40.     Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Movie on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

by members of the swarm comprise the whole Movie when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of London Has Fallen by exchanging the pieces of London Has Fallen that each one has.

41. Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material, so long as that first peer is online at the time the subsequent peer requests the file from the swarm.

42. This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of the collective swarm, every infringer is—and by necessity all infringers together are—both stealing the Plaintiff's copyrighted material and redistributing it to others.

43. Plaintiff employs proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of the BitTorrent-based swarm involved in distributing London Has Fallen. This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct

44. Plaintiff observed Defendants' activities in the torrent swarm specific to London Has Fallen and created a log of IP addresses identifying each Defendant and the date and time of Defendant's activity, attached hereto as Exhibit A.

## COUNT I

## INFRINGEMENT OF COPYRIGHTS

45. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46. Defendants' conduct infringes upon Plaintiff's exclusive rights of

reproduction and distribution that are protected under the Copyright Act.

47. London Has Fallen contains a copyright notice advising the viewer that the motion picture is protected by the copyright laws.

48. Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

49. Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Plaintiff's rights.

50. Plaintiff has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendants' conduct.

51. Plaintiff hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

52. As Defendants' infringement was intentional and willful, the Plaintiff is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

53. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all copies of Copyrighted Motion Picture made in violation of Plaintiff's copyrights.

## COUNT II
## CONTRIBUTORY INFRINGEMENT

54. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. Defendants had knowledge that they were illegally downloading and distributing Plaintiff's Movie without permission or consent.

56. Defendants, with knowledge of their illegal activities, materially contributed to each other's infringing conduct.

57. Defendants, each and individually, had both actual and constructive knowledge that they were engaged in an act consisting of direct infringement of Plaintiff's copyright.

58. Defendants downloaded a torrent file, opened it using a BitTorrent client, entered a torrent swarm particular to London Has Fallen and knowingly and intentionally engaged in contributing to the each other's infringing conduct by distributing pieces of the movie amongst one another that could be used by the recipient to further distribute in exchange for additional pieces of the file from third parties.

59. As a result of the contributory infringement of London Has Fallen by Defendants, Plaintiff has been damaged, as is more fully alleged in Count I, above.

## Demand for Jury Trial

60. Plaintiff demands trial by jury on all claims.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

A. For entry of permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in London Has Fallen and any motion picture or audiovisual work, whether now in existence or later created, that is owned or controlled by Plaintiff ("Plaintiff's Works"), including without limitation by using the internet to reproduce or copy Plaintiff's Works, to distribute Plaintiff's Works, or to make Plaintiff's Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Each Defendant also shall destroy all copies of London Has Fallen and/or Plaintiff's Works that Defendant has downloaded onto any computer hard drive, server, or other storage medium without Plaintiff's authorization, and shall destroy all copies of those downloaded audiovisual works

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

transferred onto any physical medium or device in each Defendant's possession, custody, or control;

   B. For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff;

   C. For an order of impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's audiovisual works that are in Defendants' possession or under their control;

   D. On Count II, an order that each Doe Defendant is jointly and severally liable to Plaintiff in the full amount of Judgment on the basis of a claim for contributory infringement of copyright; for an award of compensatory damages in favor of Plaintiff and against the Doe Defendants, jointly and severally, in an amount to be determined at trial;

   E. For Plaintiff's costs;

   F. For Plaintiff's reasonable attorneys' fees; and

   G. For such other and further relief as the Court deems proper.

RESPECTFULLY SUBMITTED this 30th of August, 2016.

           KERCSMAR & FELTUS PLLC

          By *s/Gregory Collins*
            Geoffrey S. Kercsmar
            Gregory B. Collins
            7150 East Camelback Road
            Scottsdale, Arizona 85251
            *Attorneys for Plaintiff*